UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MARSHA ARDOIN

VERSUS

RUSSIA WILLIAMS, ET AL.

CIVIL ACTION

NO. 22-865-JWD-SDJ

RULING AND ORDER

This matter comes before the Court on the *Motion for Summary Judgment* (Doc. 29) filed by Defendant Southern National Life Insurance Company, Inc. ("Defendant" or "SNLIC"). Plaintiff Marsha Ardoin ("Plaintiff" or "Ardoin") has filed a *Memorandum in Opposition to Motion for Summary Judgment* ("*Opposition*") (Doc. 32), and Defendant has filed a *Reply Memorandum in Support of Motion for Summary Judgment* ("*Reply*") (Doc. 33). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, SNLIC's *Motion for Summary Judgment* is denied, although SNLIC will have the opportunity to re-urge its motion.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

At all relevant times, Plaintiff was employed by Industrial Fabrics, Inc. (Doc. 1-1 at 2, ¶ 2.) Through her employer, Plaintiff sought to obtain life insurance for her spouse, John Ardoin ("Mr. Ardoin"). (*Id.* at 2, ¶ 3.) She requested a policy from Russia Williams ("Williams"), "who was a licensed insurance producer" for HUB International Midwest Limited d/b/a HUB International Gulf South ("HUB"). (*Id.* at 2, ¶¶ 1, 3.) According to Plaintiff, "HUB was a licensed insurance broker for [SNLIC]." (*Id.* at 2, ¶ 4.)

On December 14, 2021, Williams informed Plaintiff via e-mail "that [Plaintiff] had correctly completed all of the necessary steps to update her insurance coverage, which included

the requested coverage insuring [Mr. Ardoin's] life." (*Id.* at 3, ¶ 5.) The coverage was supposed to go into effect January 1, 2022. (*Id.* at 3, ¶ 6.) And Plaintiff avers that, "[b]eginning in January 2022, premiums for the 'Voluntary Spouse Life' insurance coverage began to be deducted from [Plaintiff's] paycheck by Industrial Fabrics, Inc., and paid to [SNLIC]." (*Id.* at 3, ¶ 7.)

On January 25, 2022, Mr. Ardoin passed away unexpectedly. (*Id.* at 3, ¶ 8.) Then, in an e-mail dated February 1, 2022, Williams instructed Plaintiff to complete an Evidence of Insurability ("EOI") form, "despite Williams'[s] previous representations that [Plaintiff] had already completed everything necessary to obtain the requested insurance coverage." (*Id.* at 3, ¶ 10.) When Plaintiff contacted Williams for clarification, Williams instructed Plaintiff to backdate the form and "advised [Plaintiff] that coverage would still be effective January 1, 2022." (*Id.* at 3, ¶ 12.)

Plaintiff completed the EOI form as instructed, and on February 9, 2022, Williams notified Plaintiff via e-mail that Plaintiff "had been approved for Eighty Thousand and 0/100 Dollars ($80,000.00) in spousal life insurance coverage," effective *March 1, 2022*. (*Id.* at 4, ¶ 14.) When Plaintiff filed a life insurance claim, SNLIC denied the claim "for the stated reason that [Plaintiff] had not timely submitted the EOI form." (*Id.* at 4, ¶¶ 15–16.)

B.     **Procedural Background**

Plaintiff filed suit in the Nineteenth Judicial District Court on September 26, 2022. (*Id.* at 2.) The petition alleges that Williams "failed to use reasonable diligence to procure the spousal life insurance policy as requested by [Plaintiff]." (*Id.* at 4–5, ¶¶ 21–23, 25–26.) Relatedly, Plaintiff claims that HUB is vicariously liable for Williams's negligent acts and omissions, pursuant to Louisiana Civil Code Articles 2317 and 2320. (*Id.* at 5, ¶¶ 28–29.) Likewise, Plaintiff alleges that SNLIC "is liable for the negligent acts and/or omissions of its broker, HUB and/or Williams." (*Id.* at 6, ¶ 35.) Further, SNLIC breached its duty under Louisiana Revised Statutes § 22:1973 and is

2

liable for the amount of the insurance policy, pursuant to Louisiana Revised Statutes § 22:1811. (*Id.* at 6, ¶¶ 32–34.) Finally, Plaintiff brings a detrimental reliance claim against all three Defendants. (*See id.* at 7, ¶ 38 (citing La. Civ. Code art. 1967).) Plaintiff seeks the value of the life insurance coverage, plus interest and penalties, as well as "all costs of these proceedings" and any additional relief "as the Court deems proper under the circumstances." (*Id.* at 7, ¶ 39.)

SNLIC filed a notice of removal in the Middle District of Louisiana on November 4, 2022. (Doc. 1.) It avers that the Group Term Life Insurance Policy of Industrial Fabrics, Inc. ("the Policy") is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1). (*Id.* at 3, ¶¶ 6–8.) In addition, SNLIC argues that Plaintiff's claim for benefits arises under 29 U.S.C. § 1132(a)(1)(B) and is therefore completely preempted by the Employee Retirement Income Security Act ("ERISA"). (*Id.* at 4, ¶ 9–11.) Plaintiff has not moved for remand.

During a Scheduling Conference on March 23, 2023, the parties were ordered to submit briefs "proposing a plan for how best to proceed procedurally . . . , with each party specifically addressing the issue of whether the ERISA claim should be severed from the state law claims." (Doc. 19 at 1.) In their respective briefs, Defendants Williams/HUB and SNLIC argued that ERISA preempts all of Plaintiff's state law claims. (*See, e.g.*, Doc. 21 at 3.) In the alternative, Defendants contended that ERISA preempts Plaintiff's state law claims against SNLIC, and that this Court should exercise supplemental jurisdiction over the remaining state law claims, pursuant to 28 U.S.C. § 1367. (*See, e.g.*, *id.* at 3, 5–11.) "Plaintiff d[id] not dispute that her claims against [SNLIC] arise under [ERISA] and are therefore necessarily federal." (Doc. 22 at 3.) But Plaintiff maintained that ERISA does *not* preempt her state law claims against Williams and HUB. (*Id.* at 3–5.) She also denied that this Court has supplemental jurisdiction over these state law claims or, alternatively, urged the Court to decline to exercise such jurisdiction. (*Id.* at 5–8.)

3

At a subsequent Scheduling Conference—held on October 17, 2024—the parties "agreed that a schedule allowing for simultaneous litigation of ERISA and non-ERISA claims would be most efficient." (Doc. 26 at 1.) The parties then filed a Joint Proposed Scheduling Order, which provided that, on or before December 23, 2024, the parties would file a joint stipulation or a motion for summary judgment as to "whether the plan vests the administrator with discretionary authority to determine eligibility for benefits and/or construe and interpret the terms of the plan," and "whether ERISA preempts all state law claims related to the [Policy]." (Doc. 27 at 3.) On December 23, 2024, SNLIC moved for summary judgment on these issues. (Doc. 29 at 1.)

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

"A movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("[W]e find no express or implied requirement in Rule

4

56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." (emphasis in original))). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (quoting *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the movant bears its burden of showing that there is no genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted) (quoting Fed. R. Civ. P. 56(e)). The nonmovant's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (cleaned up).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Additionally:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

### III. PARTIES' ARGUMENTS

#### A. Defendant's *Motion for Summary Judgment* (Doc. 29)

Defendant SNLIC moves for summary judgment on two issues: (1) whether the Policy

5

"vests the administrator with discretionary authority to determine eligibility for benefits and/or construe and interpret the terms" of the Policy, and (2) "whether ERISA preempts all state law claims related to the [Policy]." (Doc. 29-1 at 3.) First, SNLIC points to Policy Article IV ("Additional General Provisions"), specifically to the sub-section entitled "**Policy Interpretation:** *Who interprets policy terms and conditions?*" (*Id.* at 4 (citing Doc. 28-1 at 43).) This sub-section provides: "We [i.e., SNLIC] have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of this Certificate and The Policy." (*Id.* (quoting Doc. 28-1 at 43).) Given this clear language, SNLIC argues that it had discretionary authority to determine eligibility for benefits and/or to construe the Policy's terms. (*Id.*)

Second, SNLIC contends that "[t]here is no genuine issue of material fact that Plaintiff's claims against SNLIC are claims for dependent life benefits under the Policy." (*Id.* at 5.) Because such claims arise under ERISA § 502(a)(1)(B) (i.e., 29 U.S.C. § 1132(a)(1)(B)), they are completely preempted. (*Id.* (citing, *inter alia*, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 55–57 (1987)).) Quoting *Aetna Health Inc. v. Davila* at length, SNLIC explains that "any state-law cause of action that . . . supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." (*Id.* at 5–6 (emphasis omitted) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208–09 (2004) (citing *Pilot Life Ins.*, 481 U.S. at 54–56)).) According to SNLIC "[t]here is no genuine issue of material fact that Plaintiff's state-law cause of action . . . 'supplants the ERISA civil enforcement remedy.'" (*Id.* at 6 (emphasis omitted) (quoting *Davila*, 542 U.S. at 209).)

### B. Plaintiff's *Opposition* (Doc. 32)

Plaintiff does not dispute SNLIC's argument that the Policy vested SNLIC with discretionary authority. (*See* Doc. 32.) Rather, Plaintiff focuses on SNLIC's contention that ERISA

6

preempts Plaintiff's state law claims. (*See id.* at 4–7.) According to Plaintiff, "laws which 'regulate insurance' are excluded from ERISA preemption in accordance with 29 U.S.C. § 1144(b)(2)(A)." (*Id.* at 5.) Further, the Fifth Circuit "has 'explicitly rejected the proposition that ERISA preempts state law causes of action based on misrepresentations regarding the extent of an insured's coverage.'" (*Id.* (quoting *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 383 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012)).) Plaintiff avers that her state law claims concern "representations made to her by [SNLIC] and/or its brokers/agents," and thus her state law claims do not seek to "regulate" the ERISA plan. (*Id.*)

Plaintiff notes that courts "have consistently held" that state law claims of breach of contract and detrimental reliance "implicate independent legal duties" and therefore are not necessarily preempted by ERISA. (*Id.* (citing, *inter alia*, *Omega Hosp., LLC v. Blue Cross Blue Shield of Ala.*, No. 8-1530, 2008 WL 2510125, at *4 (E.D. La. June 19, 2008)).) Similarly, in *Access Mediquip L.L.C. v. UnitedHealthcare Insurance Co.*, the Fifth Circuit held that ERISA did not preempt a state law negligent misrepresentation claim where evaluation of the alleged misrepresentations did not require "[c]onsultation of the plans' terms." (*Id.* at 6 (quoting *Access Mediquip*, 662 F.3d at 385).) Here, Plaintiff says, Defendants falsely represented that the Policy was effective prior to the death of Plaintiff's husband. (*Id.*) Plaintiff denies that her state law claims "focus on whether or what she is owed under an ERISA plan." (*Id.* at 7.)

Lastly, Plaintiff analogizes the instant case to *Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc.*, where the Tenth Circuit determined that ERISA did not preempt a state law promissory estoppel claim. (*Id.* (citing *Hospice of Metro Denv., Inc. v. Grp. Health Ins. of Okla., Inc.*, 944 F.2d 752, 754–55 (10th Cir. 1991) (per curiam)).) The court reasoned that, where an insurance company has misrepresented whether a patient is covered, the provider's

7

state law action does not "arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage." (*Id.* (emphasis omitted) (quoting *Hospice of Metro Denv.*, 944 F.2d at 754–55 (quoting *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 246 (5th Cir. 1990))).) Thus, Plaintiff argues, ERISA does not preempt her state law claims. (*Id.*)

### C. Defendant's *Reply* (Doc. 33)

SNLIC responds that, because Plaintiff has not addressed whether the Policy vests SNLIC with discretionary authority to determine eligibility for benefits and/or to construe and interpret the terms of the plan, the Court should grant summary judgment on that issue. (Doc. 33 at 1.) Next, SNLIC argues that Plaintiff's state law claims "involve principal ERISA entities" and "require interpretation of the Policy's provisions." (*Id.* at 3.) Relatedly, SNLIC reiterates that Plaintiff is really "making a claim for dependent death benefits" under the Policy. (*Id.*) According to SNLIC, *Access Mediquip* and the other cases which Plaintiff cites are inapposite because they involved "third-party, non-ERISA" entities who brought claims against plan administrators. (*Id.* at 4.) And here, Plaintiff's state law claims—and the relief sought—amount to "a claim for benefits." (*Id.*) Thus, SNLIC says, the Court should grant summary judgment on the issue of whether ERISA preempts Plaintiff's state law claims. (*Id.* at 5.)

## IV. DISCUSSION

### A. Whether the Policy Is an ERISA Plan

#### 1. *Applicable Law*

ERISA § 502(a)(1)(B) authorizes an employee welfare benefit plan participant or beneficiary to bring civil suit in order to "recover benefits due to h[er] under the terms of h[er] plan, to enforce h[er] rights under the terms of the plan, or to clarify h[er] rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The term "employee welfare benefit plan" includes "any

8

plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, disability, death or unemployment." *Id.* § 1002(1).

"ERISA protection and coverage turns on whether the [relevant plan] satisfies the statutory definition." *Meredith v. Time Ins. Co.*, 980 F.2d 352, 354 (5th Cir. 1993) (quoting *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 183 n.7 (5th Cir. 1992)). And "[w]hether a particular plan falls within the statutory definition is a question of fact." *Id.* at 353 (citing *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449 (5th Cir. 1991)). Courts are not concerned with "whether the 'entity that established and maintained the plan *intended* ERISA to govern.'" *Id.* at 354 (emphasis added) (quoting *MDPhysicians*, 957 F.2d at 183 n.7).

A life insurance policy can "fit[] comfortably within the customary meaning of employee welfare benefit plan." *Id.* at 355 (referencing 29 U.S.C. § 1002(1)). But whether a particular life insurance policy is an ERISA plan "requires a more probing inquiry." *See id.* The Fifth Circuit has

> devised a comprehensive test for determining whether a particular plan qualifies as an "employee welfare benefit plan"; [courts] ask whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA "employee benefit plan"— establishment or maintenance by an employer intending to benefit employees. If any part of the inquiry is answered in the negative, the [plan] is not an ERISA plan.

*Id.*; *accord Martin v. Trend Pers. Servs.*, 656 F. App'x 34, 36–37 (5th Cir. 2016) (per curiam).

Whether a plan exists is a question of whether, "from the surrounding circumstances[,] a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id.* (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)). As for the "safe harbor" provision: "[A] plan is not an ERISA plan if (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; *and* (4) the employer received no profit

9

from the plan." *Id.* (emphasis in original) (citing 29 C.F.R. § 2510.3–1(j)(1)–(4) (1992)); *accord* 29 C.F.R. § 2510.3–1(j)(1)–(4) (2026). "The plan must meet all four criteria to be exempt." *Meredith*, 980 F.2d at 355. Finally, step three of the Fifth Circuit's test is itself a two-part inquiry: (1) Did the employer "establish[] or maintain[] the plan," and (2) did the employer "intend[] to provide benefits to its employees"? *Id.* (quoting *MDPhysicians*, 957 F.2d at 183); *see also Martin*, 656 F. App'x at 36 (focusing "on the employer" and its "involvement with the administration of the plan" (quoting *Gahn*, 926 F.2d at 1452)). Merely purchasing insurance for employees does not establish an ERISA plan. *See Martin*, 656 F. App'x at 36–37.

   2. *Analysis*

Whether the Policy is an ERISA plan affects this Court's exercise of jurisdiction. (*See* Doc. 1 at 4, ¶¶ 10–12 (citing, *inter alia*, 29 U.S.C. § 1332(e); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–67 (1987); 28 U.S.C. §§ 1331, 1441(a)).) The Court "must address jurisdictional questions *sua sponte* when the parties' briefs do not bring the issue [of federal question jurisdiction] to the [C]ourt's attention." *See Kidd v. S.W. Airlines, Co.*, 891 F.2d 540, 546 (5th Cir. 1990) (citing, *inter alia*, *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986)); *see also Smith v. Tex. Children's Hosp.*, 172 F.3d 923, 925 (5th Cir. 1999) ("We are obliged to examine the basis for our jurisdiction, *sua sponte*, if necessary."); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Here, SNLIC asserts that the Policy is an ERISA plan. (*See* Doc. 29-1 at 3 (referencing Doc. 1 at 3–4, ¶¶ 7–8) (rehashing arguments); *see also* Doc. 21 at 6 n.9 ("The HUB Defendants pretermit an analysis of the Plan's status as an ERISA plan, as Plaintiff has not, to the HUB Defendants' knowledge, disputed SNLIC's characterization of the Plan as such.").) Seemingly, Plaintiff does not challenge whether the Policy is an ERISA plan. (*See, e.g.*, Doc. 32 at 4 (launching

10

into discussion of preemption); Doc. 22 at 3 ("Plaintiff does not dispute that her claims against [SNLIC] arise under [ERISA] and are therefore necessarily federal.").) But neither party has asserted, as an undisputed fact, that the Policy is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1). (*See* Doc. 29-2 at 1–2; Doc. 32 at 9–10.) More importantly, neither party has cited *any* evidence tending to establish this fact. (*See* Docs. 29-1, 32, 33); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Given the posture, it is preliminarily SNLIC's burden "to demonstrate the absence of a genuine issue of material fact." *Wease*, 915 F.3d at 997 (citing *Stahl*, 283 F.3d at 263). From the parties' submissions, the Court gleans only that the Policy is voluntary and that Industrial Fabrics, Inc. collected premiums and remitted them to SNLIC. (*See, e.g.*, Doc. 32 at 1–3, 11–13.) The Court cannot—from these facts alone—ascertain whether the Policy falls outside the "safe harbor" provision,[1] *see* 29 C.F.R. § 2510.3–1(j)(1)–(4), or whether the Policy "satisfies the primary elements" of an ERISA plan, *see Meredith*, 980 F.2d at 355. And SNLIC cannot fill in these gaps with bare assertions. (*See, e.g.*, Doc. 29-1 at 3.) Thus, there remains a genuine issue whether the Policy is an ERISA plan. Consequently, there is a lingering but essential question: Does this Court have subject matter jurisdiction?

---

[1] From the parties' submissions, it is unclear, for example, whether Industrial Fabrics, Inc. contributed to the Policy or received any consideration in connection with the Policy. *See* 29 C.F.R. § 2510.3–1(j)(1)–(4). Perhaps such information appears in the Administrative Record (Doc. 28), but it is the responsibility of the parties—particularly SNLIC—to direct this Court to relevant materials. *See* Fed. R. Civ. P. 56(c)(1), (3); *cf. Dunkel*, 927 F.2d at 956. The Court re-emphasizes that SNLIC's briefs are missing necessary record citations. (*See* Docs. 29-1, 33.) Nor has SNLIC otherwise demonstrated (e.g., via attachments) that the Policy is an ERISA plan. (*See* Doc. 29-1 at 3.) Before the Court will decide the issues presented, the parties must establish that the Policy is an ERISA plan. *See Meredith*, 980 F.2d at 353–55 (discussing the relevant test at length).

11

The Court will therefore deny the *Motion for Summary Judgment* but will allow SNLIC to re-urge the motion. At this time, the Court will not decide whether the Policy vests SNLIC with discretionary authority or whether ERISA preempts any/all of Plaintiff's state law claims. *Cf. Meredith*, 980 F.2d at 353 n.1 (citing 29 U.S.C. § 1144(a)) ("Because we determine that the plan in question is not an employee benefit plan[,] we need not consider whether [the plaintiff's] claims . . . fall within the preemptive scope of ERISA . . . ."). For the benefit of the parties on re-briefing, however, the Court discusses the preemption issue at some length below—and, in the process, identifies at least one additional basis for denying the instant motion without prejudice.

### B.  Whether ERISA Preempts Plaintiff's State Law Claims

#### 1. *Applicable Law*

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Davila*, 542 U.S. at 208 (quoting 29 U.S.C. § 1001(b)). The statutory scheme is designed "to provide a uniform regulatory regime over employee benefit plans." *Id.* "To this end, ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plan regulation [is] 'exclusively a federal concern.'" *Id.* (internal citation omitted) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Given the language of ERISA § 502(a)(1)(B), "[i]t follows that":

> [I]f an individual brings suit complaining of a denial of coverage . . . , where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). [*Taylor*, 481 U.S. at 66.] In other words, if an individual, at some point in time, could have brought h[er] claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated

12

> by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id.* at 210. *Davila* has generated a two-part test:

> First, we must ask whether the plaintiff "could have brought h[er] claim under ERISA § 502(a)(1)(B)." We answer that question by identifying what the plaintiff is truly "complain[ing] . . . about." If the "only action complained of" is the "denial[ ] of coverage promised under the terms of [an] ERISA-regulated employee benefit plan[ ]," *Davila*'s first requirement is satisfied. Second, we must ask whether the plaintiff's suit implicates a "legal duty . . . independent of ERISA or the plan terms." We answer that question by reviewing the plaintiff's allegations alongside the state law on which they are based. If "interpretation of the terms of [a] benefit plan[ ] forms an essential part" of the plaintiff's claim, *Davila*'s second requirement is satisfied.

*Advanced Physicians, S.C. v. Nat'l Football League*, 859 F. App'x 695, 696 (5th Cir. 2021) (per curiam) (internal citations omitted) (quoting *Davila*, 542 U.S. at 210–13).

"ERISA only preempts those claims that relate to employee benefit plans." *Lain v. UNUM Life Ins. Co. of Am.*, 27 F. Supp. 2d 926, 929 (S.D. Tex. 1998) (citing 29 U.S.C. § 1144(a)). The phrase "relate to" is "given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Pilot Life Ins.*, 481 U.S. at 47 (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)). The Supreme Court has "emphasized that the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Id.* at 47–48 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983)); *see also Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (explaining that courts have "declined to apply an 'uncritical literalism' to the phrase ['relate to'] and instead take[] 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans" (quoting *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001))). But "some state actions may affect employee benefit plans in too tenuous,

13

remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Smith v. Tex. Children's Hosp.*, 84 F.3d 152, 155 (5th Cir. 1996) (quoting *Shaw*, 463 U.S. at 100 n.21).

When the defendant asserts preemption, the defendant bears the burden of overcoming the presumption against preemption. *Lain*, 27 F. Supp. 2d at 929 (citing *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325–26 (1997)). Specifically, "[a] defendant pleading preemption must prove that: (1) the claim 'addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *Bank of La.*, 468 F.3d at 242 (quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 432 (5th Cir. 2004)). Concerning the second element:

> [T]he critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA. As [the Fifth Circuit] ha[s] noted, ERISA may preempt some claims between traditional ERISA entities but not others. . . .The critical determination is whether the claim itself created a relationship between the plaintiff and defendant that is so intertwined with an ERISA plan that it cannot be separated.

*Id.* at 243 (cleaned up); *accord Access Mediquip*, 662 F.3d at 385.

### 2. *Analysis*

Both parties at times purport to limit the issue at hand to whether ERISA preempts Plaintiff's state law claims *against SNLIC*. (*See* Doc. 29-1 at 4–5; Doc. 32 at 8.) But simultaneously, SNLIC argues that "this *suit* is governed by and subject to the provisions of [ERISA] and that *all* state law claims and remedies are preempted thereby." (Doc. 29-1 at 4 (emphasis added); *accord* Doc. 33 at 5 ("ERISA preempts *all* state law claims made by Plaintiffs." (emphasis added)).) Likewise, Plaintiff's *Opposition* blurs the boundaries between state law claims by treating Defendants as a collective. (*See* Doc. 32 at 5–6 (characterizing Williams and HUB as

14

SNLIC's brokers/agents/employees); *see also id.* at 5 ("Because [Plaintiff] is asserting claims based on *Defendants'* actions independent of an ERISA plan, [Plaintiff's] state law claims are not preempted by ERISA." (emphasis added)).) This confusion bespeaks another issue: The parties' "preemption" arguments are, by and large, non-specific. (*See, e.g.*, Doc. 29-1 at 5–6 (insisting, without explanation, that Plaintiff's state law claims "supplant[]" ERISA (emphasis omitted) (quoting *Davila*, 542 U.S. at 209)).)

SNLIC bears the burden of establishing that ERISA preempts Plaintiff's state law claims. *See, e.g.*, *Lain*, 27 F. Supp. 2d at 929 (citing *Cal. Div. of Lab. Standards Enf't*, 519 U.S. at 325–26); *Access Mediquip*, 662 F.3d at 378 ("ERISA preemption is an affirmative defense which must be proven by the defendant at trial."); *see also id.* ("[I]f the movant bears the burden of proof on an issue because as a defendant [it] is asserting an affirmative defense, [it] must establish beyond peradventure *all* of the essential elements of the defense to warrant judgment in [its] favor." (cleaned up)). Specifically, SNLIC must prove that Plaintiff's state law claims (1) "address[] an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan" and (2) "directly affect[] the relationship among traditional ERISA entities." *Bank of La.*, 468 F.3d at 242; *see also Access Mediquip*, 662 F.3d at 385 ("The critical distinction . . . is not whether the parties to a claim are traditional ERISA entities but whether the claims affect an aspect of a *relationship* that is comprehensively regulated by ERISA." (emphasis in original)).

SNLIC insists that Plaintiff's state law claims "involve principal ERISA entities" and "require interpretation of the Policy's provisions." (*See* Doc. 33 at 3–5.) But beyond such assertions, SNLIC has not addressed whether or how (or how closely) Plaintiff's state law claims "relate to" an ERISA plan. *See Tex. Children's Hosp.*, 84 F.3d at 155 ("[S]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding

15

that the law 'relates to' the plan." (quoting *Shaw*, 463 U.S. at 100 n.21)). More fundamentally, SNLIC has not indicated *which* of Plaintiff's state law claims "involve principal ERISA entities" and "require interpretation of the Policy's provisions." (*See* Doc. 33 at 3); *see, e.g.*, *Bank of La.*, 468 F.3d at 242 ("The Bank has asserted . . . several other claims that do not require inquiry into Aetna's processing of benefit claims or administration of the Plan."). In the event that SNLIC re-urges its motion, it will be incumbent upon SNLIC to specify which state law claims are preempted and why—that is, "to put flesh on [the] bones" of its arguments. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

### V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* (Doc. 29) filed by Defendant Southern National Life Insurance Company, Inc., is **DENIED WITHOUT PREJUDICE**. The Court will allow SNLIC to re-urge its motion within 28 days of the date of this Ruling and Order.

Signed in Baton Rouge, Louisiana, on <u>February 27, 2026</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**